UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID STEPHAN LOOKS TWICE, a/k/a Kurt Douglas Andrews, | 4:22-CV-04157-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |
| LORI WILLIAMSON, Mental Health, in her individual and official capacity; SARA JO KEGLER, Mental Health Care, in her individual and official capacity; DAN SULLIVAN, Warden, in his individual capacity; COOK, Associate Warden, in his or her individual and official capacity; CHRIS TURBAK, Therapist, in his or her individual and official capacity; SHERRI SCHRODAR, Therapist, in her official capacity; DR. PAVLIS, Provider, in his or her official capacity; S. YOUST, Unit-Coordinator, in his or her official capacity; CARRIE CARSON, MH Therapist, in her official capacity; MELANIE BARNES, M.H. Supervisor, in her individual and official capacity; E. TIMMERMAN, Case Manager, in his or her official capacity; AMBROSE, Unit Staff, in his or her individual and official capacity; KELLIE WASKO, Secretary of Corrections, in her individual and official capacity; JANE DOES, Medical, in their individual and official capacities; JOHN DOES, Medical, in their individual and official capacities; BRIAN GREEN, Parole Officer, in his official capacity; KIM GUKESEW, Clinical Supervisor, in his or her official capacity; UNIT MANAGER HUGHES, Unit Manager, in his or her official capacity; TRAVIS RIPPARDA, Parole Board Officer, in his | |

1

individual and official capacity; T.
SCHREIDER, in his or her official
capacity; SAVANNAH PITCHFORD, in
her official capacity; RYAN Y., in his
official capacity; ADULT ORIENTATION
SCREENER, Jane and John Does of
that process and evaluations, in their
official capacities; AIMS,
procedural/workers/supervisors, in
their official capacities; COMS,
procedural/workers/supervisors, in
their official capacities; CORRECTEK,
procedural/workers/supervisors, in
their official capacities; D.O.H. JANE
DOES, in their individual and official
capacities; D.O.H. JOHN DOES, in their
individual and official capacities;
SUMMIT CBM; MORGAN, in his or her
official capacity; TERESA BITTINGER,
official capacity,

Defendants.

Plaintiff, David Stephan Looks Twice, an inmate at the South Dakota

State Penitentiary at the time he initiated this lawsuit,[1] filed a pro se civil

rights lawsuit under 42 U.S.C. § 1983. Docket 1. Looks Twice moves for leave

to proceed in forma pauperis and included a prisoner trust account report.

Dockets 2, 4.

---

[1] Looks Twice informed this court of his new address on April 3, 2023. Docket
5. Looks Twice is no longer in custody. *See Offender Locator*, S.D. Dep't of
Corr., https://doc.sd.gov/adult/lookup/ (last visited Apr. 11, 2023). Looks
Twice also claims that he was a "[d]etainee" from January 2022 through April
4, 2022. Docket 1 at 5. But he alleges that his intake at the State Penitentiary
was in January 2022, and he was initially sentenced on November 23, 2020.
*See id.* at 5-6; *Offender Locator*. Thus, this court will treat him as a prisoner for
all incidents alleged, rather than as a pretrial detainee.

## I.      Motion for Leave to Proceed in Forma Pauperis

Looks Twice reports average monthly deposits of $31.67 and an average monthly balance of $9.05. Docket 4 at 1. Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). "[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Looks Twice's prisoner trust account, the court grants Looks Twice leave to proceed in forma pauperis and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Looks Twice must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the

3

prisoner's institution to collect the additional monthly payments and forward
them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be
> required to make monthly payments of 20 percent of the preceding
> month's income credited to the prisoner's account. The agency
> having custody of the prisoner shall forward payments from the
> prisoner's account to the clerk of the court each time the amount in
> the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of
Court will send a copy of this order to the appropriate financial official at Looks
Twice's former institution. Looks Twice remains responsible for the entire filing
fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir.
1997).

## II.     1915A Screening

### A.     Factual Background

The facts alleged in Looks Twice's complaint are: that he was denied
adequate medical care while an inmate at the South Dakota State Penitentiary
from his intake in January 2022 to his filing of this lawsuit on November 9,
2022. Docket 1 at 5-6. He claims that his therapist's diagnosis and
recommendation was ignored by State Penitentiary officials on February 3,
2022. *Id.* at 6. He claims that the South Dakota Department of Health Jane
and John Does ignored multiple kites regarding stomach issues and nose
issues. *Id.* He also claims that staff "failed to follow through with care
recommendations" following intake. *Id.* Looks Twice alleges that Chris Turbak,
a mental health professional, "failed to prescribe medication for [three and a

4

half] months or recommend it to providers." *Id.* He alleges that a disciplinary incident then occurred, and he was moved to restricted housing. *Id.* He alleges that he filed grievances regarding these issues and that they were not addressed. *See id.* at 8. He also alleges that he was told by State Penitentiary officials that the mental health care he required was not available until he was released or placed in less restrictive housing. *Id.*

Looks Twice attaches several grievances that he filed while an inmate at the State Penitentiary. Docket 1-1 at 1-5. On July 27, 2022, he filed an Informal Resolution Request in which he stated that he was placed in a more restrictive housing environment than necessary from January 2022 to March 7, 2022. *Id.* at 5. He stated that DOC policy requires inmates to be housed in the least restrictive housing environment that is consistent with their AIMS code and custody and risk classifications. *Id.* He alleged that the high-risk unit and three-man cell in which he was placed "adversely affected [his] decision making" and caused deterioration of his mental health. *Id.* He alleged that his three-man cell assignment limited his ability to partake in major life activities. *Id.* In the Informal Resolution Request, he requests accommodations to allow him to access mental health counseling, although it is unclear whether he was in restricted housing at the time that he filed this grievance. *See id.* He also described himself as bipolar. *Id.* Looks Twice then filed a Request for Administrative Remedy on August 22, 2022, in which he described the denial of mental health treatment and requested a "less severe housing unit and access to mental health counseling sessions[.]" *Id.* at 4.

Looks Twice filed another Informal Resolution Request on September 16, 2022. *Id.* at 3. In this grievance, he claimed that kites regarding indifference to his medical needs were ignored on June 18, June 30, July 6, July 21, and August 31. *Id.* He also claimed that Dr. Pavlis, Sherri Schrodar, and Chris Turbak referred him to therapy on March 8, 2022, and he never received this therapy. *See id.* He stated that the kites "address[ed] a serious need of medical care and treatment" related to "[m]ental wellness[.]" *Id.* He alleged that lack of staff, programs, and training caused his medical needs to be ignored. *Id.*

Looks Twice filed a Request for Administrative Remedy on October 3, 2022, stating that he had been diagnosed as bipolar with PTSD and suicidal ideation. *Id.* at 2. He claims that he was assessed by Sherri S.[2] and Carrie Carson on February 13 and April 13, and he claims either that Melanie Barnes assigned these parties to assess him or that he was assigned to Barnes.[3] *See id.* He claims that he met with Chris Turbak on March 2 and that Dr. Pavlis provided medication on March 18. *Id.* Looks Twice also described a meeting with "M.H. Sara Jo K."[4] on July 20. *Id.* He alleged that he told Sara Jo K. that he needed more help, and she responded by eating a piece of candy and pulling out a bottle of lotion from her desk, which left him feeling humiliated and

---

[2] The court assumes that Sherri S. is Sherri Schrodar, a therapist defendant named in this lawsuit.
[3] Looks Twice wrote in his grievance, "2/13, 4/13; Sherri S., Carrie Carson assessed, Melanie Barnes assigned." Docket 1-1 at 2.
[4] The court assumes that M.H. Sara Jo K. is Sara Jo Kegler, a mental health care defendant named in this lawsuit.

ashamed. *Id.* He alleged that he spoke with Lori W.[5] on September 15, 2022,
about sexual abuse resources, and she told him that she was not trained to
deal with his type of trauma. *Id.*

Looks Twice filed a third Request for Administrative Remedy on October
12, 2022. *Id.* at 1. In this grievance, he described his mental health issues and
"the documented needed services [he] was referred to." *Id.* He claimed that Lori
W. was "having to reach out for services that [weren't] available" at the State
Penitentiary. *Id.* He requested a transfer to a less restrictive housing unit, help
getting parole, accommodation for his need for mental health services
unavailable in the State Penitentiary, and a change in policy to provide PTSD
and abuse treatment. *Id.*

Looks Twice brings claims for deliberate indifference to serious medical
needs in violation of his Eighth Amendment rights. *See* Docket 1 at 3. He
alleges violation of his right to due process under the Fifth and Fourteenth
Amendment regarding AIMS unit assignments. *Id.* at 3, 7. He also brings an
Eighth Amendment claim for conditions of confinement in restricted housing.
*Id.* at 7. Looks Twice provides some indication of which claims he seeks to
bring against each defendant, but because this is unclear in his complaint, this
court construes Looks Twice as bringing each claim against all defendants. *See*
*id.* at 4. He sues all individual defendants except former State Penitentiary

---

[5] The court assumes that Lori W. is Lori Williamson, a mental health defendant
named in this lawsuit.

Warden Dan Sullivan[6] in their official capacities. *Id.* at 2-4. He sues
Williamson, Kegler, Sullivan, Cook, Turbak, Barnes, Ambrose, Kellie Wasko,
the Medical Jane and John Does, Travis Ripparda, and the DOH Jane and
John Does in their individual capacities. *Id.* He also brings claims against
Summit CBM. *Id.* at 4.

Looks Twice claims that he suffered emotional injury, exhaustion, mental
deterioration, body stress, pain, and constant stomach issues from indigestion.
*Id.* at 6. He also alleges that he has struggled with "painful memories, ongoing
nightmares, [and] suicidal ideation." *Id.* Looks Twice asks for $250,000 for
emotional pain and $10,000,000 for punitive damages. *Id.* He also asks for
temporary release or a transfer to an institution where he could receive
treatment. *Id.*

**B.    Legal Background**

The court must assume as true all facts well pleaded in the complaint.
*Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil
rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89,
94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d
835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro*

---

[6] Looks Twice brings a claim against Dan Sullivan, the former South Dakota
State Penitentiary Warden, in his individual and official capacity. Docket 1 at
3. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate
when a public officer who is a party in an official capacity dies, resigns, or
otherwise ceases to hold office while the action is pending. The officer's
successor is automatically substituted as a party." The current South Dakota
State Penitentiary Warden is Teresa Bittinger, who is automatically substituted
for Sullivan on the official capacity claims. *See id.*

*se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663-64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553-63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant

who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.   Legal Analysis

#### 1.   Official Capacity Claims

Looks Twice brings claims against all individual defendants except Sullivan in their official capacities. *See* Docket 1 at 2-4. All official capacity defendants are employees of the state of South Dakota or medical care providers who have contracted with the state of South Dakota. *See id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Looks Twice requests both money damages and injunctive relief. Docket 1 at 6. The state of South Dakota has not waived its sovereign immunity. Thus, Looks Twice's claims against all individual defendants in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

Further, Looks Twice's official capacity claims for injunctive relief are moot because he is no longer in custody. *See* Docket 5; *Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) ("Because plaintiffs have been released on parole and are no longer confined at [the Western Missouri Correctional Center], their claims are moot."). Thus, Looks Twice's claims against all individual defendants in their official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(2).

### 2.   Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Looks Twice's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

### a.   Eighth Amendment Deliberate Indifference to Serious Needs Claims

Looks Twice brings claims for failure to provide medical care. Docket 1 at 3. Construing his complaint liberally, Looks Twice brings Eighth Amendment

11

claims against Williamson, Kegler, Sullivan, Cook, Turbak, Barnes, Ambrose, Wasko, the Medical Jane and John Does, Ripparda, and the DOH Jane and John Does in their individual capacities for deliberate indifference to his serious medical needs. *See id.* at 2-4. He also brings this claim against Summit CBM. *See id.* at 4.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estate of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical

needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Looks Twice alleges that he has mental health issues, including that he has been diagnosed as bipolar, has PTSD, and has suffered from suicidal ideation. Docket 1-1 at 2. He also alleges "nose issues" and "stomach issues[,]" including indigestion caused by his mental health. Docket 1 at 6. Looks Twice's mental health conditions are serious medical needs. Looks Twice does not allege sufficient detail and severity for his nose and stomach issues to rise to the level of serious medical needs except to the extent that his stomach issues are physical manifestations of his mental health conditions and are thus symptoms of those conditions. *See id.* Looks Twice's only allegation regarding the Department of Health Jane and John Does is that they ignored his kites about his nose issues and stomach issues. *See id.* He makes no claims that these defendants were aware of and deliberately indifferent to his mental health conditions. *See id.* Thus, Looks Twice's Eighth Amendment deliberate

13

indifference to serious medical needs claims against the Department of Health Jane and John Does in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Looks Twice must allege that each remaining individual defendant either participated in the unconstitutional conduct or caused it to occur through a failure to train or supervise. *See Parrish*, 594 F.3d at 1001. Looks Twice alleges that Williamson was not trained to treat his conditions and that she had to reach out for services that were not available at the State Penitentiary. *See* Docket 1-1 at 1-2. Although he claims that he did not receive these services, Looks Twice does not allege that Williamson was aware of and deliberately indifferent to his serious medical needs. *See id.* Instead, he merely alleges that she was unable to treat his needs. *See id.* Looks Twice alleges that he spoke with Sara Jo Kegler and that she made him feel ashamed and humiliated because she ate a piece of candy and reached for lotion during this conversation. *Id.* at 2. His claims are that Kegler, a mental health care provider, treated him poorly during a counseling session or similar session of treatment. *See id.* Thus, he does not allege that she was deliberately indifferent, only that he found her treatment to be subpar. *See id.*; *Jolly*, 205 F.3d at 1096.

Looks Twice alleges either that he was assigned to Barnes, a mental health supervisor, or that Barnes assigned Schrodar and Carson to assess him. *See* Docket 1 at 4; Docket 1-1 at 2. He makes no other allegations regarding Barnes. *See* Docket 1-1 at 2. Looks Twice makes no allegations that Sullivan, Cook, Wasko, the Medical Jane and John Does, Ripparda, or Summit CBM

14

were aware of his serious medical needs. *See* Docket 1 at 6, Docket 1-1 at 1-5. Thus, Looks Twice's Eighth Amendment deliberate indifference to serious medical needs claims against Williamson, Kegler, Sullivan, Cook, Barnes, Ambrose, Wasko, the Medical Jane and John Does, Ripparda, the DOH Jane and John Does, and Summit CBM are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Looks Twice does allege sufficient facts to state a claim for deliberate indifference to serious medical needs against Turbak. He alleges that Turbak was aware of his mental health conditions and failed to prescribe him medication or recommend it to providers to be prescribed to him for three and a half months. *See* Docket 1 at 6. This court cannot conclude that this is a mere disagreement with treatment decisions, although ultimately that may be the case. *See id.*; *Jolly*, 205 F.3d at 1096. The record as to Looks Twice's treatment and medication is unclear because he also claims that Dr. Pavlis provided him with medication on March 18, 2022, which is less than three months after his intake in January 2022. *See* Docket 1-1 at 2. Looks Twice provides no facts as to what medications he requires or whether the medication he sought from Turbak was the same as that which he received from Dr. Pavlis. *See* Docket 1 at 6; Docket 1-1 at 2. Thus, although the timeline is unclear, Looks Twice alleges that Turbak denied him medication for over a month, if not more. *See* Docket 1 at 6; Docket 1-1 at 2. Looks Twice's Eighth Amendment deliberate indifference to serious medical needs claim against Turbak survives § 1915A screening.

15

### b.    Eighth Amendment Conditions of Confinement Claims

Looks Twice objects to the conditions of his confinement in restricted housing. Docket 1 at 7. Construing his complaint liberally, he brings an Eighth Amendment conditions of confinement claim against Williamson, Kegler, Sullivan, Cook, Turbak, Barnes, Ambrose, Wasko, the Medical Jane and John Does, Ripparda, and the DOH Jane and John Does in their individual capacities. *See id.* at 2-4. He also brings this claim against Summit CBM. *See id.* at 4.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 832). The United States Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to

inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989).

Here, Looks Twice fails to allege facts sufficient to state a claim for conditions of confinement in violation of his Eighth Amendment rights. In an attached grievance, he alleged that his "three-man cell assignment limited, substantially, [his] ability to partake in major life activities[.]" Docket 1-1 at 5. Other than the lack of access to mental health care discussed above, Looks Twice provides no other details regarding the major life activities that he claims to have been denied. *See id.* He claims that he was exposed to an "unnecessary risk of safety and wellbeing" in his high-risk housing assignment, but he alleges no other facts as to that risk. *Id.* at 4. Thus, he fails to allege facts sufficient to show an "extreme deprivation" that has denied him "the minimal civilized measure of life's necessities[.]" *See id.* at 4-5; *Hudson*, 503 U.S. at 9 (citation and internal quotation omitted). Looks Twice's Eighth Amendment conditions of confinement claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

17

### c.      Fifth Amendment Due Process Claims

Looks Twice claims that his lack of medical care and his housing assignment violated his Fifth Amendment right to due process. *See* Docket 1 at 3. "The [D]ue [P]rocess [C]lause of the Fifth Amendment applies only to the federal government." *Truong v. Hassan*, 829 F.3d 627, 631 n.4 (8th Cir. 2016). Looks Twice only brings claims against state defendants and private defendants who have contracted with the state of South Dakota. *See* Docket 1 at 2-4. Thus, his Fifth Amendment due process claims are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d.      Fourteenth Amendment Due Process Claims

Looks Twice claims that his lack of medical care and his housing assignment violated his Fourteenth Amendment right to due process. *See id.* at 3. He brings these claims against Williamson, Kegler, Sullivan, Cook, Turbak, Barnes, Ambrose, Wasko, the Medical Jane and John Does, Ripparda, and the DOH Jane and John Does in their individual capacities. *See id.* at 2-4. He also brings this claim against Summit CBM. *See id.* at 4.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." *Id.* (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be

18

answered if the inmate can establish a constitutionally protected liberty interest. *Id.* (citing *Wilkinson*, 545 U.S. at 221). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (quoting *Wilkinson*, 545 U.S. at 221). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). But "inmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Smith*, 954 F.3d at 1080 (alteration in original) (quoting *Wilkinson*, 545 U.S. at 223).

Looks Twice would have a liberty interest in avoiding an assignment to restrictive housing if the conditions of confinement in restrictive housing imposed an "atypical and significant hardship[.]" *See id.* But even if he did have such a liberty interest, his Fourteenth Amendment Due Process claims must also allege that each individual defendant participated in the unconstitutional conduct or caused it to occur through a failure to train or supervise the offending actor. *Parrish*, 594 F.3d at 1001. Although Looks Twice alleges that he was not housed in the least restrictive housing available in violation of DOC policies, he makes no allegations that any named defendant was responsible for his housing. *See* Docket 1-1 at 4-5. Thus, he fails to establish that any individual defendant participated in his housing assignment or caused it to occur through a failure to train or supervise. *See id.*; *Parrish*, 594 F.3d at 1001.

To the extent that Looks Twice alleges that he has an interest in medical care protected by due process, that claim is best brought under the Eighth Amendment as discussed above. Thus, Looks Twice's Fourteenth Amendment due process claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thus, it is ORDERED:

1.   That Looks Twice's claims against all individual defendants in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2.   That Looks Twice's Eighth Amendment deliberate indifference to serious medical needs claim against Chris Turbak in his individual capacity survives § 1915A screening.

3.   That Looks Twice's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.   That the Clerk of Court shall send a blank summons form and Marshal Service Form (Form USM-285) to Looks Twice so that he may cause the complaint to be served upon defendant Turbak.

5.   That Looks Twice shall complete and send the Clerk of Court a separate summons and USM-285 form for defendant Turbak. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-

285 form are not submitted as directed, the complaint may be dismissed.

6.      The United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1) and this order, upon defendant Turbak.

7.      Defendant Turbak will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

8.      Looks Twice will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated April 19, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE